USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/11/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER CROWHURST,

                Plaintiff,

    - against -

DENISE SZCZUCKI et al.,

                Defendants.

---

16cv182 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Jennifer Crowhurst, brings this action against Dr. Denise Szczucki, Hampton Inns LLC, Hampton Inn Management LLC, Sheryl Dicker Stein as the administrator of the Estate of Norman Stein ("the Estate"), and The Fannie Rebecca Dicker Stein Special Needs Trust. The action arises from injuries the plaintiff sustained from an assault in a hotel room in Easton, Pennsylvania, on November 22, 2015. The plaintiff was assaulted by Fannie Rebecca Stein ("Fannie"), an autistic young adult for whom the plaintiff was serving as a caretaker and companion. The plaintiff asserts causes of action sounding in negligence, medical malpractice, violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and violation of the Wage Theft Prevention Act, N.Y. Labor Law § 195.

    The Estate moves for summary judgment on the plaintiff's negligence claim. Dr. Szczucki moves for summary judgment on the plaintiff's claim for medical malpractice.

1

I.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The trial court's task at the summary judgment motion stage of the litigation "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed for purposes of this motion, unless otherwise indicated.

In November 2013, Norman and Sheryl Stein hired the plaintiff to be a caretaker and companion for their daughter, Fannie Rebecca Stein. (Crowhurst Dep. at 18, 84.) Fannie was, at the time, a 22-year-old woman with a long-standing history of chronic psychiatric conditions, including autism. (Szczucki Ex. 4 ("Szczucki Medical Records") at 1-2.)

The plaintiff and Fannie would often travel together without Fannie's parents. (Crowhurst Dep. at 25-28.) Starting in 2014, the two would go on trips once or twice per month to

3

destinations including Walt Disney World and the Crayola Experience in Easton, Pennsylvania. Id.

In November 2015, Fannie and the plaintiff went on a trip to the Crayola Experience. (Id. at 136-37.) Fannie and the plaintiff arrived in Easton on November 18, 2015. (Id.) On the morning of November 22, 2015, Fannie attacked the plaintiff in their hotel room. (Stein Ex. O.) The police were called, and Fannie was charged with terroristic threats, simple assault, harassment, and criminal mischief. (Id.) The plaintiff was severely injured and alleges that she suffered traumatic brain injury, a pinched nerve, post-concussion syndrome, post-traumatic amnesia, depression, swelling of the brain, damage to her reproductive organs, anxiety, and mental anguish. (Second Am. Compl. ("SAC") ¶ 48.)

The plaintiff testified that, during the preceding two years that she worked with Fannie, Fannie had never exhibited violent or aggressive behavior. (Crowhurst Dep. at 36-37.) The plaintiff stated that she never felt physically threatened by Fannie before the attack. (Id.)

The plaintiff now claims that the attack was caused by withdrawal from drugs given to Fannie by Norman Stein -- namely, marijuana and OxyContin -- and by medication prescribed for Fannie by Fannie's psychiatrist, Dr. Szczucki. (Id. ¶¶ 44-46, 59-62.) The record does not make clear when Fannie used

4

marijuana or OxyContin preceding the attack. At her deposition, the plaintiff testified that Fannie had not smoked any marijuana while they were on their trip, which had been ongoing for five days by the time of the attack. (Crowhurst Dep. at 173-74.) As for OxyContin, there is no evidence in the record that Fannie used the drug after the Spring of 2014. (Szczucki Dep. at 113-14, 217-18; Crowhurst Dep. at 49, 122-24, 170-71.)

Fannie began treatment with Dr. Szczucki on April 29, 2013. (Szczucki Dep. at 29.) Dr. Szczucki treated Fannie for medication management and therapy after Fannie was referred to her by Fannie's father, Norman Stein. (Id. at 42.) Fannie was diagnosed with opioid dependence, learning disorder not otherwise specified, morbid obesity, anxiety not otherwise specified, depression not otherwise specified, and autism. (Szczucki Medical Records at 2.) In addition, Dr. Szczucki stated that she believed Fannie has borderline personality disorder features, meaning she has certain traits of borderline personality disorder without meeting all of the criteria for such a diagnosis. (Szczucki Dep. at 61-63.)

During the course of Dr. Szczucki's treatment of Fannie, Dr. Szczucki prescribed a variety of medications for Fannie, including Suboxone for opioid dependence, (id. at 103-05), Valium and Paxil for anxiety, (id. at 50, 114, 129), Prozac for anxiety and mood disorder, (id. at 50), Seroquel for anxiety,

5

hallucinations, depressions, and mood instability, (id. at 57-58), and Topamax and Zonisamide as appetite suppressants, (id. at 58, 136-37). Fannie was also prescribed Sprintec by another doctor for birth control. (Id. at 123.) The plaintiff testified that Fannie had taken her regular medications on the morning of the attack. (Crowhurst Dep. at 153.)

The plaintiff offers the testimony of Dr. Owen Muir in support of her case. Dr. Muir is the Director of the neurostimulation service at Brooklyn Minds Psychiatry, P.C. (Expert Report of Dr. Owen Muir ("Muir Rep.") at 1.) Dr. Muir explains that he is a licensed psychiatrist with over six years' experience. (Id.) According to Dr. Muir's expert report, Dr. Muir was "retained to conduct an independent review of the complaint, deposition transcript, expert reports and medical records pertaining to the psychiatric treatment Dr. Denise Szczucki rendered to Fannie Rebecca Stein, to determine if there was a dereliction of duty on the part of the physician which resulted in direct damages to the plaintiff." (Id.) Dr. Muir does not give an opinion on whether marijuana or OxyContin, or withdrawal from those drugs, can cause violent outbursts or that they did in fact cause Fannie's violent outburst. (See Muir Rep.) At his deposition Dr. Muir agreed that marijuana is "not particularly likely to cause aggression on its own." (Muir Dep. at 210.)

6

In his report, Dr. Muir concludes that

> To a reasonable degree of medical certainty and based upon my education and experience in the area of medicine, particularly psychiatry, including child and adolescent psychiatry, as well as my significant expertise in complex cases involving likely personality disorders, I believe that the risk of medications prescribed by Dr. Szczucki to Fannie Stein -- and her likely withdrawals therefrom, were a direct cause of the assault suffered by Jennifer Crowhurst at the hands of Fannie Stein on November 22, 2015.

(Id. at 17.) This is Dr. Muir's only opinion on causation. Dr. Muir does not specifically explain which drugs he is referring to in his opinion. (See id.) At his deposition, Dr. Muir stated that his opinion was in regard to "[a]ll of [the drugs] as prescribed by Dr. Szczucki." (Muir Dep. at 57.) Dr. Muir does not offer an opinion in his report on how withdrawal from any of the drugs prescribed by Dr. Szczucki to Fannie could cause a violent outburst. (See Muir Rep.) Dr. Muir testified at his deposition that he did not know whether Fannie had taken her prescribed medications on the day of the assault and did not know if Fannie was suffering from withdrawal from any of the prescribed drugs. (Muir Dep. at 92, 160-61.) Dr. Muir further testified that it was "highly likely" "that there was something totally unrelated to the medication that [Fannie] was taking that would have caused the assault." (Id. at 204-05.)

7

**III.**

The Estate argues that it is entitled to summary judgment because the plaintiff cannot prove the causation requirement of her negligence claim. The negligence claim against the Estate is based on the theory that Fannie's assault against the plaintiff was caused by Norman Stein's negligent provision of marijuana and OxyContin to Fannie or the effects of Fannie's withdrawal from those drugs. The Estate argues that even if Norman Stein had given Fannie marijuana and OxyContin at some time, the plaintiff cannot show that those drugs or the withdrawal from using those drugs caused Fannie to attack the plaintiff. The Estate's argument is persuasive.

The parties agree that New York law applies to the claims at issue on this motion. The elements of negligence under New York law are (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty, and (3) injury substantially caused by that breach. Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002) (citing Merino v. N.Y.C. Transit Auth., 639 N.Y.S.2d 784, 787 (App. Div. 1996)). A defendant's negligent act qualifies as a proximate cause of an injury where the act was "a substantial cause of the events which produced the injury." Hain v. Jamison, 68 N.E.3d 1233, 1237 (N.Y. 2016) (quoting Mazella v. Beals, 57 N.E.3d 1083, 1090 (N.Y. 2016)). Whether an act is a substantial cause of an injury "turns upon

8

questions of foreseeability." Id. Thus, "the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is [generally] one to be made by the factfinder . . . ." Id. However, "[t]here are certain instances . . . where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law." Derdiarian v. Felix Contracting Corp., 414 N.E.2d 666, 670 (N.Y. 1980).

Where a plaintiff alleges that exposure to a drug or toxin caused an illness or injury, the plaintiff must offer an expert's opinion that sets forth "that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)." Parker v. Mobil Oil Corp., 857 N.E.2d 1114, 1120-21 (N.Y. 2006).

The plaintiff alleges that Norman Stein gave Fannie marijuana and OxyContin and that those drugs caused Fannie to attack the plaintiff. However, the plaintiff does not offer any expert opinion that those drugs are capable of causing a violent reaction. To the contrary, at his deposition, Dr. Muir agreed that marijuana is "not particularly likely to cause aggression," (Muir Dep. at 210-11), and Dr. Muir did not discuss OxyContin at his deposition at all. Moreover, Dr. Muir's expert report does not mention either drug. Conversely, the Estate's expert opined

9

that there is no evidence that marijuana and OxyContin, even if taken together, would cause a person to act violently. (Stein Ex. M, Expert Report of Dr. Steven A. Fayer at 5.)

The plaintiff's expert opines that the attack was caused by Fannie's going through withdrawal symptoms from the drugs prescribed by Dr. Szczucki. He offers no opinion about whether withdrawal from marijuana or OxyContin played any role in the assault at issue. In any event, there is simply no evidence that Fannie was going through withdrawal from marijuana or OxyContin at the time she attacked the plaintiff.

The plaintiff has not offered any admissible evidence that marijuana or OxyContin or withdrawal from those drugs could cause, or did in fact cause, Fannie to attack the plaintiff. No reasonable jury could find sufficient evidence to prove proximate cause against the Estate. Therefore, the Estate's motion for summary judgment is **granted**.

**IV.**

Dr. Szczucki alleges that the plaintiff cannot succeed on the causation element of her medical malpractice claim.

Under New York law, the essential elements of proof in a medical malpractice action are (1) a deviation or departure from accepted standards of care, and (2) evidence that such departure was a proximate cause of the injury or damage alleged. See Amsler v. Verrilli, 501 N.Y.S.2d 411, 412 (App. Div. 1986). For

the purposes of this motion, Dr. Szczucki challenges only the second element, causation.

It is well established in New York law that "unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." Sitts v. United States, 811 F.2d 736, 739 (2d Cir. 1987) (quoting Keane v. Sloan-Kettering Inst. for Cancer Research, 464 N.Y.S.2d 548, 549 (App. Div. 1983)). The expert's opinion "must demonstrate the requisite nexus between the malpractice allegedly committed and the harm suffered." Anyie B. v. Bronx Lebanon Hosp., 5 N.Y.S.3d 92, 93 (App. Div. 2015) (quotation marks omitted). Third parties injured by a physician's breach of the duty of care to the patient, such as a duty to warn of the consequences of taking certain medications, can sue the physician who prescribed the medications and failed to give appropriate warnings. Davis v. S. Nassau Communities Hosp., 46 N.E.3d 614, 620, 622 (N.Y. 2015) (holding that physicians owe a duty to "members of a patient's immediate family or household who may suffer harm as a result of the medical care a physician renders to that patient"). There is no basis to establish a different rule for psychiatrists, and Dr. Szczucki does not contend that there is such a distinction. Pingtella v. Jones, 758 N.Y.S.2d 717, 721 (App. Div. 2003)

(finding "no valid reason to carve out an exception for claims arising out of alleged medical malpractice for psychiatric treatment"); see also (Dkt. No. 118 at 19-20).

The plaintiff's expert, Dr. Muir, alleges that Dr. Szczucki committed a number of ethical violations and instances of malpractice. For example, he asserts that Dr. Szczucki prescribed medication to Fannie before establishing a physician-patient relationship, that Dr. Szczucki issued duplicate and triplicate prescriptions to Fannie, and that Dr. Szczucki altered her records after receiving the complaint in this case. Dr. Muir does not explain how these violations might have caused Fannie to attack the plaintiff. And, although Dr. Muir criticizes Dr. Szczucki's methods and record-keeping practices, he does not opine that the drugs that Dr. Szczucki prescribed for Fannie violated the standard of care. Dr. Muir offers only one opinion on causation: "I believe that the risk of the medications prescribed by Dr. Szczucki to Fannie Stein -- and her likely withdrawals therefrom -- were a direct cause of the assault suffered by Jennifer Crowhurst at the hands of Fannie Stein on November 22, 2015." (Muir Rep. at 17.)

Dr. Muir's opinion is plainly insufficient to satisfy causation in this case. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion

12

evidence that is connected to existing data only by the ipse dixit of the expert."); In re Rezulin Prod. Liab. Litig., 441 F. Supp. 2d 567, 577 (S.D.N.Y. 2006) (excluding the plaintiff's expert testimony and granting summary judgment to the defendant where the plaintiffs' expert "provide[d] no support" for his causation opinion); see also In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 458 (S.D.N.Y. 2016) (excluding the plaintiff's causation expert where the expert provided "no analysis, explanation or basis for his opinions"). Dr. Muir does not state in his report the particular medications to which he is referring. He also does not opine that violence is a side effect of withdrawal from any of the drugs Dr. Szczucki prescribed for Fannie or that Fannie suffered from withdrawal on the day of the attack. To the contrary, at his deposition, Dr. Muir testified that he did not know whether Fannie was experiencing withdrawal symptoms on November 22, 2015, and that he did not know whether she had taken her medication that day as prescribed. See Foley v. United States, 294 F. Supp. 3d 83, 94 (W.D.N.Y. 2018) (excluding the plaintiff's expert and granting summary judgment to the defendant where the plaintiff's expert did "not attempt[] to explain his methodology regarding how he arrived at [his] opinions"). Dr. Muir also testified that it was "highly likely" "that there was something totally unrelated

13

to the medication that [Fannie] was taking that would have caused the assault." (Muir Dep. at 204-05.)

Dr. Szczucki has not moved to exclude Dr. Muir's opinion under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). However, Dr. Szczucki does contend that Dr. Muir's opinion does not support causation and that there is no evidence of causation. Dr. Szczucki is plainly correct. At bottom, Dr. Muir opines that the attack was caused by withdrawal from drugs prescribed by Dr. Szczucki but does not specify which drugs caused the alleged withdrawal, whether withdrawal from those drugs is capable of causing violent outbursts, whether Fannie was in fact suffering from withdrawal at the time of the attack, or any scientific studies to support his theory. Thus, in short, Dr. Muir fails to provide a competent expert opinion that is capable of satisfying causation in this case.

Because the plaintiff has failed to put forth sufficient evidence to prove causation, Dr. Szczucki's motion for summary judgment is **granted**.

## CONCLUSION

For the reasons explained above, the motion for summary judgment by the Estate to dismiss the claim for negligence and the motion for summary judgment by Dr. Szczucki to dismiss the claim for malpractice are **granted**. The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Clerk of Court is directed to close docket numbers 201 and 208.

**SO ORDERED.**

**Dated:** **New York, New York**
**February 11, 2019**

_____
John G. Koeltl
United States District Judge