UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JENNIFER CROWHURST,                              :

                  Plaintiff,              :          REPORT AND
                                                     RECOMMENDATION
      -v.-                                   :
                                             16 Civ. 182 (BAF) (GWG)
DR. DENISE SZCZUCKI, et al.,                     :

                  Defendants.            :
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Before the Court is plaintiff Jennifer Crowhurst's motion for attorneys' fees related to her wage theft claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").[1]  Crowhurst requests $93,725 in attorneys' fees and $1,658.85 in costs.  For the reasons stated below, Crowhurst should be awarded $4,400 in attorneys' fees and $1003.60 in costs.

I.     BACKGROUND

      Crowhurst is an autism behavior interventionist who cared for an autistic client, Fannie Rebecca Stein ("Becky").  Second Amended Complaint, filed April 7, 2017 (Docket # 94) ("2d Amend. Complaint") ¶¶ 21–22; see also Deposition of Jennifer Crowhurst ("Crowhurst Dep.") annexed as Exhibit 4 to Affirmation of  Lowell J. Sidney in Opposition to Motion for Summary Judgment, filed July 20, 2018 (Docket # 216) ("Sidney 2018 Aff.") at 84; Deposition of Sheryl Dicker Stein ("Stein Dep.") annexed as Exhibit 2 to Sidney 2018 Aff. at 23.  Crowhurst was

---

[1] See Plaintiff's First Motion for Attorney Fees, filed June 19, 2019 (Docket # 301) ("Pl. Mot."); Declaration of Mark E. Spund in Opposition to First Motion for Attorney Fees, filed June 25, 2019 (Docket # 302) ("Spund Decl."); Memorandum of Law in Opposition to First Motion for Attorney Fees, filed June 25, 2019 (Docket # 303) ("Opp. Mem."); Reply Memorandum of Law in Support of First Motion for Attorney Fees, filed July 3, 2019 (Docket # 305) ("Reply Mem.").

employed by the Fannie Rebecca Dicker Stein Trust ("Stein Trust").  2d Amend. Complaint ¶ 49. Crowhurst's employment with the Stein Trust ended on November 22, 2015.  See Pl. Mot. ¶ 5; see also Stein Dep. at 53.

Crowhurst terminated her employment following an incident on November 22, 2015, in a hotel room at the Hampton Inn in Easton, Pennsylvania.  See 2d Amend. Complaint ¶¶ 28, 42; Stein Dep. at 53.  Crowhurst alleges that Becky had a violent outburst during which Becky attacked Crowhurst causing "traumatic brain injury; pinched nerve; post-concussion syndrome; post-traumatic amnesia; depression; swelling of the brain; damage to her reproductive organs; anxiety; and mental anguish."  2d Amend. Complaint ¶ 48.  Crowhurst contends that this assault was proximately caused by the prescription drugs Becky was prescribed by Dr. Denise Szczucki ("Dr. Szczucki"), id. ¶ 25, and by illegal drugs given to Becky by her father, Norman Stein, id. ¶¶ 43–46.  In addition, Crowhurst alleges that her injuries were attributable to the fact that the telephone in the hotel room did not function properly, which prevented her from calling for help. Id. ¶ 41.

Crowhurst has amended her complaint several times, but her complaints have always asserted four causes of action: (1) a medical malpractice claim against Dr. Szczucki; (2) a negligence claim against the Hampton Inn and related defendants; (3)  negligence claims against Norman Stein (or his Estate),[2] Becky's legal guardian; and (4) a wage claim against one of the Steins or the Stein Trust as Crowhurst's employer.  See Complaint, filed Jan. 10, 2016 (Docket # 1) ("Complaint") ¶¶ 68–83; First Amended Complaint, filed March 17, 2017 (Docket # 85) ("1st

_____

[2]  Norman Stein died after the original complaint was filed.  See Order, filed October 13, 2016 (Docket # 65).  Sheryl Dicker Stein as Administrator for Estate of Norman Stein was ultimately substituted for Norman Stein.  See Order Granting Motion to Substitute Party, filed Feb. 8, 2017 (Docket # 80).

Amend. Complaint") ¶¶ 82–92; 2d Amend. Complaint ¶¶ 82–92.

The fees at issue in the current application relate to the wage claim only. The wage claim was brought under the FLSA and NYLL alleging wage theft for failing pay the wages Crowhurst was due within seven days of the conclusion of her employment ("wage theft claim"). 2d Amend. Complaint ¶¶ 55, 89. Specifically, Crowhurst claimed wages for 75 hours of overtime "from Disney," 44 hours of overtime "from Crayola," plus 36 other hours. Id. ¶¶ 52, 86. At a rate of $40.00 per hour, the total of wages sought was $6,200. Id. Additionally, Crowhurst sought repayment for a $2,000 loan she gave to Becky. Id. ¶¶ 53, 87. The complaint also sought liquidated damages of up to 100% of unpaid wages under the FLSA and NYLL. Id. ¶¶ 56, 90. In total, Crowhurst sought damages of "$16,400." Id. ¶ 92. She also sought "costs and attorneys fees" on this claim. Id.  ¶¶ 57, 92.

As is described next, the litigation of this matter centered almost entirely on the three tort claims, not the wage claim.

Following a conference held on May 4, 2016, Judge Koeltl issued a scheduling order, staying deposition discovery and setting deadlines for a proposed motion by Dr. Szczucki to dismiss the tort claim against her. (Docket # 31). Dr. Szczucki's motion to dismiss was filed May 24, 2016, which Crowhurst opposed. (Docket ## 36–38, 43–44, 45, 47).

Hampton Inn sought a conference (Docket # 53), and was permitted to file without a conference (Docket # 55), a motion for judgment on the pleadings with respect to the tort claim asserted against it. On the same day, August 10, 2016, Crowhurst submitted a Rule 26(f) discovery plan report. (Docket # 54). Crowhurst then filed interrogatories, see First Set of Interrogatories, filed Aug. 30, 2016 (Docket # 56), and requests for production of documents, see Request, filed Aug. 30, 2016 (Docket # 57). While there were some generic requests applicable

to all defendants, the specific requests related almost exclusively to the tort claims, except for one request related to Crowhurst's employment. (Request No. 6).  None of the interrogatories related specifically to the wage claim.

On October 13, 2016, Hampton Inn filed a motion for judgment on the pleadings, which Crowhurst opposed.  (Docket ## 66–70).  Because Norman Stein died while the action was pending, Crowhurst filed an application seeking to substitute an administrator in November 2016 (Docket ##  71, 72, 73), which Crowhurst later withdrew on consent (Docket # 75).  The administrator was then substituted without any motion practice by Crowhurst.  (Docket ## 79–80).[3]

On February 8, 2017, Judge Koeltl dismissed the complaint, without prejudice, for want of subject matter jurisdiction and for failing to submit a certificate of merit with the complaint as required by N.Y. C.P.L.R § 3012-a(a)(1).  See Memorandum Opinion and Order, filed Feb. 8, 2017 (Docket # 81).  Crowhurst filed an Amended Complaint on March 17, 2017.  (Docket # 85).  Judge Koeltl issued an amended scheduling order on June 22, 2017.  (Docket # 104).  Oral argument for Dr. Szczucki's motion to dismiss and Hampton Inn's motion for judgment on the pleadings was held on the same day, Transcript of Proceedings on June 22, 2017, filed July 26, 2017 (Docket # 118), and ultimately both motions were denied (Docket # 105).

Crowhurst also filed three notices to take depositions on July 14, 2017.  (Docket ## 109,

---

[3]  In one filing with the Court, Crowhurst states that she "Respond[ed] to a Motion to Dismiss the claims as against Fannie Rebecca Stein and Sheryl Stein for failure to name the proper Employer."  Letter, filed April 26, 2019 (Docket # 257) at 2.  In fact, while the Steins requested a pre-motion conference for permission to file a motion to dismiss the claim for failure to name the proper employer, they never filed a motion to dismiss because on April 7, 2017, Crowhurst amended the complaint (Docket # 94), to name the Stein Trust — instead of Norman, Sheryl, and Becky Stein — as the defendant on the wage theft claim.

4

110, 111).  The deposition of Crowhurst took place on August 16, 2017, lasting approximately six hours and produced a 205 page transcript of which only 6 pages pertained to the wage theft claim.  Spund Decl., Exhibit H ("Objections to Time") at 4, Exhibit L; see also Crowhurst Dep..  Howard Presant, the witness for Stein Trust, was deposed on September 13, 2017 for less than a hour.  Objections to Time at 5.  Sheryl Stein was deposed on the same day with her deposition lasting about 2.5 hours.  Objections to Time at 5; see also Stein Dep..  Of the 94 page transcript, fewer than 10 pages relate to the wage theft claim.  See Objections to Time at 5; see also Stein Dep..

 In July 2017, the parties litigated a discovery motion relating to Becky's medical records as kept by Dr. Szczucki and whether they could be used at the depositions.  (See Docket ## 113–117, 123).  In August 2017, Crowhurst litigated the issue of whether Dr. Szczucki should be compelled to produce Becky's medical records.  (Docket ## 129, 133, 137, 138, 144).  Neither of these issues involved the wage claim.

The Steins also raised discovery disputes relating to expert witnesses (none of whom opined regarding the wage claim) (Docket # 160), and the undersigned held a conference on these disputes on November 27, 2017.

The parties also raised disputes regarding Becky's proposed deposition.  (Docket ## 154–57).  Judge Koeltl held a conference on November 16, 2017 (Docket # 171) and ordered the parties propose a schedule for a motion to compel or a motion for a protective order regarding Becky's deposition (Docket # 159).  In the following months, the issue of whether Becky should be examined and/or deposed was briefed.  (Docket ## 167, 168, 169, 170, 175, 177).  The undersigned held a hearing on the matter on January 22, 2018, see Transcript of Proceedings held on Jan. 22, 2018, filed April 17, 2018 (Docket # 184), and ultimately granted

the protective order preventing Becky's deposition, see Order, filed Jan. 22, 2018 (Docket # 178).  There was no suggestion during these proceedings that the subject of Becky's testimony would relate to the wage claim.  Indeed, in the papers opposing the protective order, Crowhurst stated that the action "revolves" around the assault, First Memorandum of Law in Opposition to Motion for Protective Order, filed Jan. 5, 2018 (Docket # 175) ¶ 5, and her summary of why Becky's testimony was material made no mention of the wage claim, id. ¶¶ 7–9.

Meanwhile, Crowhurst sought Court intervention regarding an expert fee — again unrelated to the wage claim. (Docket ## 173, 174, 176).

On July 5, 2018, Dr. Szczucki (Docket ## 201, 202, 203, 204, 205, 206, 207) and the Steins (Docket ## 208, 209, 210, 211) filed motions for summary judgment on the tort claims. Crowhurst opposed both motions (Docket ## 214, 215, 216, 217, 218, 219, 220, 221, 222), and Dr. Szczucki (Docket ## 228, 229) and the Steins (Docket ## 225, 226, 227) replied.  Oral argument on the motions for summary judgment was held on February 11, 2019, Transcript of Proceedings held on Feb. 11, 2019, filed March 22, 2018 (Docket # 252).  Judge Koeltl ultimately granted summary judgment for Dr. Szczucki and the Steins as to Crowhurst's tort claims.  See Memorandum Opinion & Order, filed Feb. 11, 2019 (Docket # 237) ("Summary Judgment Order") at 15.  While no final judgment was entered under Fed. R. Civ. P. 54, Crowhurst filed a notice of appeal anyway.  See Notice of Interlocutory Appeal, filed Feb. 28, 2019 (Docket # 241).

On February 27, 2019, Judge Koeltl set deadlines for the filing of pretrial materials. (Docket # 238).  On the same date, the Stein Trust sought a reference to a magistrate judge to settle the wage law claim.  (Docket # 239).  Crowhurst responded that she was not seeking mediation of the matter.  (Docket # 242).  On March 8, 2019, Stein Trust then moved for

judgment to be entered against it on the "total" of the wage claim.  (Docket # 244).  The case was referred to the undersigned for settlement, Amended Order Referring Case to Magistrate Judge, filed March 12, 2019 (Docket # 247), and a conference was set for April 22, 2019, (Docket # 248).

On April 17, 2019, Stein Trust wrote the Court seeking to withdraw its Answer and affirmative defenses regarding the wage theft claim and consented to the Court entering a judgment for unpaid wages, liquidated damages, interest, and costs and attorneys' fees.  Letter, filed April 17, 2019 (Docket # 255) at 1.  In response, Crowhurst wrote a letter that sought punitive damages and emotional distress damages, see Letter, filed April 26, 2019 (Docket # 257) — forms of damages that had not previously been sought in any of the complaints.  The Stein Trust then reiterated its willingness to pay the unpaid wages, liquidated damages, interest, and legal fees as determined by the Court.  See Letter, filed April 29, 2019 (Docket # 259).  A settlement conference was held on May 6, 2019 (Docket # 266), but it was not successful.

Crowhurst, Stein Trust, and Hampton Inn submitted pretrial filings, consisting of proposed voir dire questions and jury instructions, on May 22, 2019.  (Docket ## 269–272, 275). Crowhurst and Stein Trust also filed motions in limine.  (Docket # 277, 282).  Only Stein Trust's motion in limine (see Docket # 282) related to the wage claim.  The parties fully briefed the motions in limine.  (See Docket ## 283, 284, 287, 290).

In the meantime, on May 23, 2019, the Stein Trust again reiterated its willingness to enter into a consent judgment against it on the wage claim (Docket # 281), which Crowhurst urged the court not to consider (Docket # 285).  The Stein Trust also made a Fed. R. Civ. P. Rule 68 settlement offer on May 7, 2019, in the amount of $22,500 plus legal fees.  See Opp. Mem. at 5.

Following a hearing on June 3, 2019, Crowhurst's claims against Stein Trust were severed and a final judgment pursuant to Fed. R. Civ. P. 54(b) was entered in favor of Crowhurst for $19,160 plus interest, for a total of $22,527.92.  Rule 54(b) Judgment, filed June 5, 2019 (Docket # 294) ("Judgment").

Crowhurst filed the instant motion for attorneys' fees on June 19, 2019.  See Pl. Mot. Crowhurst seeks attorneys' fees and costs for time spent on the case from December 2, 2015 to the date of the application of attorneys' fees on June 19, 2019.  See Motion for Attorneys' Fees, Exhibit A ("Fee Chart Exhibit") at *1, *5.[4]  She seeks $93,725 in attorneys' fees and $1,658.85 in costs.  Id. at *5.

II.     DISCUSSION

A.     Law Governing The Award of Attorneys' Fees

Because Crowhurst was a prevailing party on her FLSA and NYLL claims, she is entitled to an award of reasonable attorneys' fees. 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  In determining this fee award, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); accord Stanczyk v. City of N.Y., 752 F.3d 273, 284 (2d Cir. 2014).  This calculation yields a "presumptively reasonable fee," Arbor Hill, 522 F.3d at 183, and is commonly referred to as the "lodestar."  Although district courts remain free to modify this award to ensure that it represents a reasonable fee, see, e.g., Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992), the lodestar

---

[4]     Some documents filed do not contain page numbers.  Thus, page numbers identified by "*__" refer to the pagination assigned by the Court's ECF system.

figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010) (citation and internal quotation marks omitted).

      B.    <u>Number of Hours</u>

          1.   <u>Law Governing Assessment of Reasonable Hours</u>

In this Circuit, an application for attorneys' fees pursuant to federal statute must normally be supported by contemporaneous time records.  <u>See</u>, <u>e.g.</u>, <u>Scott v. City of N.Y.</u>, 643 F.3d 56, 57–59 (2d Cir. 2011) (per curiam).  The Second Circuit has recognized, however, that the rule does not apply where fees are sought pursuant to New York state law.  <u>See</u> <u>Marion S. Mishkin Law Office v. Lopalo</u>, 767 F.3d 144, 147–48 (2d Cir. 2014); <u>accord</u> <u>Nationstar Mortg. LLC v. Dolan</u>, 2019 WL 1970522, at *4 (N.D.N.Y. May 3, 2019).  Crowhurst seeks fees not only under the FLSA but also under the NYLL, to which the contemporaneous record requirement does not apply.  <u>See</u>, <u>e.g.</u>, <u>Serin v. N. Leasing Sys. Inc.</u>, 501 F. App'x 39, 41 (2d Cir. 2012).  Nonetheless, even under New York law, the party seeking a fee "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent."  <u>Flemming v. Barnwell Nursing Home & Health Facilities, Inc</u>., 56 A.D.3d 162, 164–65 (3d Dep't 2008), <u>aff'd</u>, 15 N.Y.3d 375 (2010).  In addition, under New York Law, "[i]t is settled that the award of fees must be predicated upon a 'proper and sufficient affidavit of services.'" <u>Bankers Fed. Sav. Bank FSB v. Off W. Broadway Developers</u>, 224 A.D.2d 376, 378 (1st Dep't 1996) (quoting <u>Matter of T.J. Ronan Paint Corp.</u>, 98 A.D.2d 413, 419 (1st Dep't  1984)).

A separate principle limiting fee requests applies in this case.  Crowhurst is not entitled to fees for hours that relate exclusively to her tort claims, which were the subject of the vast bulk of the litigation in this matter.  We thus apply the principle that "[i]n determining the number of

hours reasonably expended for purposes of calculating the lodestar, the district court should exclude . . . hours dedicated to severable unsuccessful claims" — in this case, the three tort claims against other parties. <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999); <u>accord</u> <u>Green v. Torres</u>, 361 F.3d 96, 98 (2d Cir. 2004) (court must "exclude any hours spent on severable claims" ) (internal citations omitted). We recognize that the exclusion of severable claims would not be appropriate if any of Crowhurst's non-wage claims and her wage claims "involve[d] a common core of facts," <u>Green</u>, 361 F.3d at 98; were "based on related legal theories," <u>id.</u>; or "require[d] essentially the same proof," <u>Kerin v. U. S. Postal Serv.</u>, 218 F.3d 185, 194 n.6 (2d Cir. 2000) (quoting <u>Murphy v. Lynn</u>, 118 F.3d 938, 952 (2d Cir. 1997)). In this case, however, the wage claims share essentially no common facts, legal theories, or proof with the tort claims.

Additionally, in any fee application, if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its calculation of the presumptively reasonable fee. <u>Hensley</u>, 461 U.S. at 434; <u>accord</u> <u>Quaratino</u>, 166 F.3d at 426 n.6; <u>Farmer v. Hyde Your Eyes Optical, Inc.</u>, 2015 WL 2250592, at *15 (S.D.N.Y. May 13, 2015). Nonetheless, as the Supreme Court noted in <u>Hensley</u>, "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983), "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998) (quoting <u>Carey</u>, 711 F.2d at 1146).

2.  <u>Analysis</u>

Crowhurst's attorneys do not claim to have kept contemporaneous time records.  Instead, they appended to their application a document labeled "Crowhurst Attorney Fees on Wage Theft Claim," which we will refer to as their "Fee Chart," as an exhibit to a document entitled "Motion for Attorneys' Fees."  <u>See</u> Fee Chart Exhibit.  The Fee Chart contains columns listing dates, tasks, and hours, and provides the initials of one of three attorneys who worked on the case: Lowell J. Sidney, Michael Cassell, and Colleen Ni Charmhaic.  <u>See</u> <u>id.</u>

 Even though the Fee Chart is the sole proof offered for the number of hours the attorneys claim to have expended, nothing in their motion papers provides an explanation as to how the hours described in the Fee Chart were determined.  Indeed, the only reference in the motion papers to the Fee Chart is a statement relating to costs, not hours.  <u>See</u> Pl. Mot. at 6 (Crowhurst states she is seeking reimbursement for "$1,553.60 in costs and disbursement as show in the exhibit").  A clue as to the chart's preparation is an unhelpful statement within the last entry of the chart itself, dated June 19, 2019, which credits Sidney with "researching and creating the Exhibit," Fee Chart Exhibit at *5.

In its opposition memorandum, the Stein Trust properly pointed to the lack of explanation of — or support for — the Fee Chart entries as a critical failing.  <u>See</u> Opp. Mem. at 1–3.  In reply, Crowhurst made no effort to offer competent proof as to the method for creating the entries in the Fee Chart.  Instead, she offered the essentially irrelevant observation that the Fee Chart contains specific and seemingly detailed entries.  <u>See</u> Reply Mem. at 2.[5]  Crowhurst

_____

[5]  The full text of this explanation, which is not supported by any facts, let alone sworn testimony, is as follows:

In fact, a review of Exhibit A demonstrates that Plaintiff has identified with

11

correctly recognized that New York law expects detailed submissions for attorney fee

applications.  See, e.g., Flemming, 56 A.D.3d at 165 (noting that attorneys "met their burden of

proving [] the value of their services . . . [through] three affidavits from the lead class counsel

explaining the fees and expenses in detail, the resumes of attorneys who worked on the case,

verification of expenses, and detailed time sheets regarding the work performed and hours

billed.").  But Crowhurst's essentially unsupported submission would not pass muster under

even the more forgiving standards of New York law.  See Friedman v. Miale, 69 A.D.3d 789,

791 (2d Dep't 2010) (attorney fee application insufficient because affidavits submitted "did not

establish the reasonableness of the amount of hours which were collectively expended");

SO/Bluestar, LLC v. Canarsei Hotel, Corp., 33 A.D.3d 986, 988 (2d Dep't 2006) (attorney fee

award not warranted when submission was inadequate).  In the end, the Court has no basis for

concluding that whatever process was used for generating the time entries listed in the Fee Chart

resulted in an accurate count of hours.[6]  In light of the lack of proper support the hours presented,

---

specificity each task performed by her attorneys over the three-and-a-half years
since the action was commenced until the entry of Judgment. Exhibit A sets forth
the task; the date the task was performed; the attorney who performed the task;
and the time spent on the task. Clearly, such records are sufficient to support an
application for attorneys' fees.

Reply Mem. at 2.  Crowhurst also states that she "parsed her records spent on the matter over the
three-and-a half years that the case has been litigated, so that the attorneys' fees sought as set
forth in Exhibit A are specifically related to Plaintiff's wage theft claims." Id. at 5.  This
conclusory statement also fails to indicate how the records were generated.

    [6]  Additionally, even in his conclusory statements, only Sidney addresses the fee chart,
see Pl. Mot. at 1.  There is no affidavit or other sworn statement from the other attorneys who are
seeking hours: Cassell and Chairmhaic.  Accordingly, in the absence of any indication from
Sidney that he witnessed the expenditure of hours by the other attorneys, their entries within the
fee chart are entirely without any foundation or support.

    Finally, we note in passing that the sworn statement provided by Sidney does not comply

the Court would be justified in declining to award any hours to Crowhurst on this basis alone.

Nonetheless, we have examined the "Fee Chart" to see if it offers any assistance in approximating a reasonable number of hours spent on the wage claims.  In doing so, we have observed that the "Fee Chart" is rife with problematic entries.  Fourteen of the entries cover periods of multiple days, with a single time entry and a description that lumps together multiple tasks.  See Fee Chart Exhibit.  Some of these entries cover a period of almost three years.  See, e.g., id. at *2 (listing four separate entries for the period "6/26/16-5/1/19").  These as well as many other include descriptions that list multiple tasks.  See, e.g., id. ("Prepare for Depositions. Prepare exhibits. Outline Questions. Review retaliatory lawsuits and emails.") (entry of 8/15/17); id. at *4 ("Continued preparation of Jury Charges re: Steins; finalized Joint Pretrial Order and filed same; finalized and filed jury charges and voir dire; reviewed Motion in Limine; reviewed numerous filings by defendants") (entry of 5/22/19).  Time entries of this type are commonly referred to as "block billing" — that is, "the aggregation of a number of tasks in a single time entry."  O.R. v. N.Y.C. Dep't of Educ., 340 F. Supp. 3d 357, 370 (S.D.N.Y. 2018).  Because block billing interferes with the ability of a court to evaluate the reasonableness of attorney hours, its use often results in a reduction of fees.  Id.; accord Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012).  Vague entries similarly make a reasonableness determination difficult, Thai-Lao Lignite, 2012 WL 5816878, at *10, and the Fee Chart contains numerous vague descriptions, such as "follow up with numerous communication between counsel re trial scheduling."  Fee Chart

---

with 28 U.S.C. § 1746, which requires that a declaration filed in federal court contain substantially the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746(2).

Exhibit at *3 (entry of 2/19-3/19).  Some entries are absurdly conclusory, such as "Conduct discovery."  Id. at *2 (entry of 6/26/16-5/1/19).  There is also lawyer time billed for obviously non-attorney tasks such as service of the complaint.  Id. at *1 (entry of 4/3/17; billing 1.5 hours of attorney time).

The Stein Trust points out several instances where entries in the fee chart do not align with the record, see Opp. Mem. at 4; Opposition to Time at 6–8.  We note just two of these.  In an entry dated "5/23/19-5/30/19," a portion of the billing is for travel to and from an appearance for an oral argument on motions in limine.  Fee Chart Exhibit at *4.  No oral argument occurred during this time period, however.  An entry dated 2/11/19 reflects appearance at "oral argument on Summary Judgement Motion re Steins."  Id. at *3.  The only motion from a defendant named "Stein," however, did not relate to the wage claims.  (Docket ## 208, 209, 210).  Crowhurst did not explain to these failings in his reply brief.

As already noted, "no fee may be awarded for services on [a] unsuccessful claim." Hensley, 461 U.S. at 435, although fees can be awarded when unsuccessful claims are "'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'"  Quaratino, 166 F.3d at 425 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)).  Here there was no such overlap between the wage claims and the various tort claims.  The claims were factually and legally distinct as manifested by the fact that summary judgment granted on two of the claims — malpractice and negligence — did not impact the wage theft claim.  See Summary Judgment Order; Judgment.  Indeed, the wage theft claim was severed from the remaining negligence claim.  See Judgment.

While the Fee Chart purports to account exclusively for the time spent on the wage claim, Fee Chart Exhibit at *1; Reply Memo at 8, Crowhurst never explains how this was

accomplished.  Moreover, numerous entries relate to generic activities and thus provide us with no confidence that they do not include hours that relate exclusively to the tort claims.  See, e.g., Fee Chart Exhibit at *3 (six hours to "review case in preparation for trial") (entry of 2/11/19).

As a result, we will completely disregard the Fee Chart for the purpose of determining the reasonable number of hours expended.  Given the dearth of evidentiary support for the reasonable number of hours, we believe New York law would support the denial of any award of fees.  Nonetheless, while it is a close case, and because New York law does not require contemporaneous time records, we conclude that some award should be given as it is apparent that attorney effort was undertaken to purse the wage claim.  To assess the number of hours to be awarded, we rely on the record of tasks accomplished as reflected in the docket sheet as well as our "own familiarity with the case and [our] experience with the case and [our] experience generally," Clarke, 960 F.2d at 1153 (quoting Di Filippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)) (internal quotation marks omitted) — in particular, our experience with how long it should take a reasonable practitioner to accomplish the tasks accomplished by Crowhurst's counsel.

We have already discussed at length the history of this case.  See section I above.  As was made plain, the vast majority of the litigation efforts were directed toward the tort claims.

Our effort to determine what actually pertained to the wage claim (or was otherwise intertwined with litigation of the wage claim) begins with the fact that Crowhurst of course filed a complaint listing the wage theft claim, Complaint ¶¶ 68–83, and as well as two subsequent amended complaints that included the claim, see 1st Amend. Complaint ¶¶ 82–92; 2d Amend. Complaint ¶¶ 82–92.  The wage theft allegations were substantially similar in each instance and relatively brief.

15

Crowhurst also served interrogatories, see First Set of Interrogatories, filed Aug. 30, 2016 (Docket # 56), and requests for production of documents, see Request, filed Aug. 30, 2016 (Docket # 57), which related mostly to the tort claims.  Crowhurst never suggests that any search of her own documents was required in response to the Stein Defendants' discovery requests as to the wage theft claim.  See Plaintiff's Response to Interrogatories annexed as Exhibit 1 to Sidney 2018 Aff.  None of the discovery disputes brought before the Court related to wage claims.  See, e.g., Transcript of Proceedings held on June 22, 2017, filed July 26, 2017 (Docket # 118) at 2 (no motions from Stein Trust); Transcript of Proceedings held on Sept. 18, 2017, filed Oct. 11, 2017 (Docket # 152) at 2 (motion to compel discovery of medical records); Transcript of Proceedings held on Nov. 16, 2017, filed Dec. 19, 2017 (Docket # 171) at 2 (motion regarding deposition of Becky); Transcript of Proceedings held on Jan. 22, 2018, filed April 17, 2018 (Docket # 184) at 2 (same); Transcript of Proceedings held on Feb. 11, 2019, filed March 22, 2019 (Docket # 252) at 8 (no summary judgment submitted regarding wage theft claim).[7]

As already discussed, only a tiny fraction of the deposition transcripts relate to the wage claim.  Also, as we discussed earlier, Crowhurst prepared a number of motions in limine and pretrial submissions in connection with preparation for trial that related almost exclusively to the tort claims.  As for Crowhurst's own motion in limine, it was unrelated to the wage theft claim.  See First Motion, filed May 22, 2019 (Docket # 277).  Crowhurst also participated in a settlement conference with the undersigned on May 6, 2019, which included the wage claims.

As we have noted, however, before the settlement conference and the trial submissions

---

[7]  The Fee Chart refers vaguely to third-party discovery regarding the "wage theft claim," Fee Chart Exhibit at *2 (entry of 6/26/16-5/1/19), but no explanation of this discovery or detail is provided.

16

— on March 8, 2019 — the Stein Trust offered to have judgment entered against it for what it calculated to be the "total" amount. (Docket ## 244, 255). Crowhurst's only objection to this amount was that it did not include "attorney fees, liquidated damages, emotional distress damages and punitive damages." Letter, filed April 26, 2019 (Docket # 257). In fact, Stein Trust had offered to include liquidated damages and attorneys' fees. (See Docket ## 244, 255). As for emotional distress and punitive damages, the unavailability of such damages — which were never sought in any complaint — was raised in a motion in limine ultimately filed by the Stein Trust. See First Motion, filed May 22, 2019 (Docket # 278). In her response, Crowhurst never offered any support for the proposition that such damages are ever legally permissible for a non-retaliation claim under the NYLL, see Memorandum of Law in Opposition to Motion in Limine, filed May 30, 2019 (Docket # 290) at 4–5, and we are aware of none. Indeed, in the "Summary of Claim" section of the joint pretrial order filed several days earlier, Crowhurst made no claim for emotional distress or punitive damages. Proposed Pre-Trial Order, filed May 22, 2019 (Docket # 280) at 6–7. Of course, Crowhurst never explained why she would be entitled to pursue these damages in light of the fact that she failed to include them in the complaint.

The day after the Court's settlement conference, on May 7, 2019, the Stein Trust offered to settle the wage claims for $22,500 plus legal fees. See Opp. Mem. at 5.[8] That this was an effort to offer all possible damages on the wage claim is reflected in the fact that (1) Crowhurst sought only $16,400 in her complaint, 2d Amend. Complaint ¶ 92; and (2) Crowhurst ultimately

---

[8] Stein Trust's motion in limine reiterated the Trust's willingness to settle for the amount of unpaid wages and liquidated damages — specifically $19,160 plus legal fees, expenses and interest. See Memorandum of Law in Support of Motion in Limine, filed May 24, 2019 (Docket # 284) at 6.

obtained a judgment only for $19,160, plus interest based on the Stein Trust's motion to have judgment entered against itself, see Order, filed June 3, 2019 (Docket #291); Judgment. The numerous pretrial submissions were all filed weeks after the May 7 offer was made. (Docket ## 269–80).

In light of Stein Trust's offer to give all relief that Crowhurst was seeking as early as March 2019, the Court does not believe that a reasonable attorney would have pursued trial preparation on the wage claim. See generally Quaratino, 166 F.3d at 426 n.6 (time spent on unnecessary work not included in fee award). Thus we do not believe any of the trial preparation time should be compensated. See Hensley, 461 U.S. at 434 (court must exclude "unnecessary" hours from the lodestar calculation). The same is true of the time spent preparing for the settlement conference.[9]

The Court thus rejects Crowhurst's argument that the Court may not consider her inexplicable recalcitrance to accept Stein Trust's effort to provide 100% recovery on the wage claim to reduce the fee award. See Reply Mem. at 4–5 (citing Williams v. Epic Sec. Corp., 368 F. Supp. 3d 651, 661–62 (S.D.N.Y. 2019). Williams relied on Ortiz v. Regan, 980 F.2d 138, 140–41 (2d Cir. 1992), which dealt with a situation where a district court had improperly considered "informal negotiations" and used "hindsight" to determine whether further litigation was warranted. Id. at 140. Ortiz's concern was that "plaintiffs with meritorious claims may be

---

[9]  Another way to frame this is issue is to note Crowhurst's limited success on her wage claims given that she sought emotional distress damages and punitive damages. As the Supreme Court has noted, in awarding attorneys' fees, "the most critical factor is the degree of success obtained." Patterson v. Balsamico, 440 F.3d 104, 123 (2d Cir. 2006) (quoting Hensley, 461 U.S. at 436). To account for limited success, courts may make a percentage reduction in the fees sought. See, e.g., Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 152–53 (2d Cir. 2008). In light of Crowhurst's failure to obtain any emotional distress or punitive damages, a reduction is equally appropriate under this principle.

improperly dissuaded from pressing forward with their litigation." Id. at 140–41.  That concern does apply here inasmuch as the Stein Trust was making every effort to offer Crowhurst 100% of her recovery and, in response, starting in March 2019, she insisted on damages to which she was not entitled.  To the extent a finding of "bad faith" is required to exclude the time spent after Stein Trust offered to pay all damages, id. at 141, such bad faith existed here in light of Crowhurst's insistence on obtaining legally unrecoverable damages.

Having assessed all the efforts that were reasonably expended and not attributable exclusively to the tort claims, and having a been presented with a completely unsupported and unreliable Fee Chart, we conclude that 20 total hours is the appropriate number of hours that should be awarded in pursuit of the wage claim.  The total number of hours claimed by all three attorneys is approximately 200.[10]  We thus reduce this number proportionally as to each attorney by 90%. as set forth in the table below:

| Name | Claimed Number of Hours | Hours To Be Awarded |
|------|-------------------------|---------------------|
| Lowell J. Sidney | 104.9 | 11 |
| Michael Cassell | 72.2 | 7 |
| Colleen Ni Chairmhaic | 23 | 2 |

C.    Hourly Rate

In fixing a reasonable hourly rate, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

---

[10]  Crowhurst did not total the hours on the Fee Chart.  She did, however, provide a total of the amounts sought for each attorney.  Fee Chart Exhibit at *5.  We have divided these amounts by the claimed hourly rate to determine the hours being sought by each attorney.

reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Savoie v. Merchants Bank,

166 F.3d 456, 463 (2d Cir. 1999).  Arbor Hill directs that a Court engage in the following

process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind
> all of the case-specific variables that we and other courts have identified as
> relevant to the reasonableness of attorney's fees in setting a reasonable hourly
> rate. The reasonable hourly rate is the rate a paying client would be willing to
> pay. In determining what rate a paying client would be willing to pay, the district
> court should consider, among others, the Johnson factors; it should also bear in
> mind that a reasonable, paying client wishes to spend the minimum necessary to
> litigate the case effectively. The district court should also consider that such an
> individual might be able to negotiate with his or her attorneys, using their desire
> to obtain the reputational benefits that might accrue from being associated with
> the case.

522 F.3d at 190 (emphasis in original).  The "Johnson factors" are those laid out in Johnson v.

Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717–19).

Arbor Hill specifically identifies the following factors to be considered in determining

what a reasonable, paying client would be willing to pay:

> [T]he complexity and difficulty of the case, the available expertise and capacity
> of the client's other counsel (if any), the resources required to prosecute the case
> effectively (taking account of the resources being marshaled on the other side but
> not endorsing scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself, whether an
> attorney might have initially acted pro bono (such that a client might be aware
> that the attorney expected low or non-existent remuneration), and other returns

(such as reputation, etc.) that an attorney might expect from the representation.
Id. at 184.

Importantly, Arbor Hill holds that a court must "step[ ] into the shoes of the reasonable,
paying client, who wishes to pay the least amount necessary to litigate the case effectively."  522
F.3d at 184 (emphasis added).  In other words, whether the attorneys on the case properly
command the rates they seek in the marketplace is not dispositive of the rate that they are to be
awarded.  Rather, "Arbor Hill demands that we determine the cheapest hourly rate an effective
attorney would have charged."  O.R., 340 F. Supp. 3d at 364 (emphasis in original).

Sidney and Cassell seek $500 per hour.  Fee Chart Exhibit at *1.  Charmhaic seeks $225
per hour.  Id.  Little information is provided that would support these rates, however.  We are not
informed what rate any of them has ever commanded in the legal marketplace.  See Knigge ex
rel. Corvese v. Corvese, 2001 WL 883644, at *2 (S.D.N.Y. Aug. 6, 2001) (criticizing fee
submission for not disclosing how long, if ever, the attorney billed at the requested hourly rate).
The only pertinent information provided is that Sidney is a litigator with 14 years experience;
that Cassell has 25 years experience (while he was once a partner in a firm, he appears to
currently have a solo practice); and that Charmhaic has 18 years experience.  See Pl. Mot. at 3–4.
We are provided no information as to the specific subject areas of their practice, although we are
informed that Sidney is "quoted in the New York Post for his many high-profile cases" and that
Charmhaic was a "guest commentator on National Public Radio."  Id.  Thus, as far as the record
reflects, they have no prior experience in employment law, labor law, or wage litigation.

Because Crowhurst has not presented the Court with any evidence of the prevailing
market rate, we turn to case law to set an appropriate hourly rate for Crowhurst's attorneys.  See
e.g., Farbotko v. Clinton Cty of N.Y., 433 F.3d 204, 209 (2d Cir. 2005) (in assessing prevailing

21

market rates, courts may consider "rates awarded in prior cases and the court's own familiarities with rates prevailing in the district."); James v. Nat'l R.R. Passenger Corp., 2005 WL 6182322, at *17 (S.D.N.Y. Mar. 28, 2005) (when plaintiff submitted no evidence to convince the court the requested rates were reasonable, the court turned to prior cases).  The Court also relies on its own knowledge of the rates charged by practitioners.  See, e.g., McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton Cty., 433 F.3d 204, 209 (2d Cir. 2005) (A court may consider its "own familiarity with the rates prevailing in the district") (citation omitted).  This Court's knowledge derives largely from the Court's participation in settlement conferences, in which the Court, in its private discussions, often asks attorneys to reveal their hourly rates.

One court noted in 2013 that "[c]ourts in this district have approved hourly rates of $300–400 for partners in labor and employment cases." 1199 SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc., 2013 WL 6003731, at *7 (S.D.N.Y. Nov. 13, 2013) adopted by 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013).  More recently, cases have continued to award experienced wage-and-hour attorneys rates between $300 and $400 per hour.  See Mondragon v. Keff, 2019 WL 2551536, at *12 (S.D.N.Y. May 31) (collecting cases) adopted by 2019 WL 2544666 (S.D.N.Y. June 20, 2019).  A rate may be reduced further for attorneys in small firms because they have fewer overhead costs.  See Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (citing Reiter v. MTA of N.Y., 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007)); see also Saunders v. The Salvation Army, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007).  Here, we are provided no information as to the current

firms of any of the attorneys and it appears they practice law as solo practitioners.

The quality of work by Crowhurst's counsel in this case also points to a lower rate. See Canaveral v. Midtown Diner NYC, Inc., 2019 WL 4195194, at *7 (S.D.N.Y. Sept. 5, 2019) (courts may consider quality of work in awarding fees) (citing Harris v. Fairweather, 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10) adopted by 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012)). To give just one example, and as already noted, Crowhurst's counsel insisted on pursuing emotional distress and punitive damage claims when they had no argument to justify these damages.

Additionally, the Court has considered all of the factors in Johnson and Arbor Hill and notes that the wage claim was not unusually complex, that it did not demand great resources, that there were no particular timing demands on the case, and that the attorneys were lacking in experience in wage cases. Accordingly, Sidney and Cassell's reasonable hourly rate for this case is $225 and Charmhaic's is $175.

D.    Lodestar Calculation

Based on these rates, the total amount that should be awarded is as follows:

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| Lowell J. Sidney | 11 | $225 | $2,475 |
| Michael Cassell | 7 | $225 | $1,575 |
| Colleen Ni Charmhaic | 2 | $175 | $350 |

Grand Total: $4,400

E.    Costs

Plaintiffs successful under the FLSA and NYLL also may be entitled to costs, which "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to

their clients." See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting

U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); accord Febus

v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).  Crowhurst is

entitled to costs; however, "[a]s with attorneys' fees, [a] requesting party must substantiate the

request for costs." Guo v. Tommy's Sushi, Inc., 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5,

2016); see also, e.g., Euceda v. Preesha Operating Corp., 2017 WL 3084490, at *4 (E.D.N.Y.

June 30) ("In the absence of adequate substantiation, a party is not entitled to recover costs. . . .

Plaintiff has failed to provide any substantiation, such as invoices or receipts, documenting the

costs he now seeks to recover."), adopted by 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Crowhurst seeks $1,658.85 in costs: the $400 filing fee, $553.60 for deposition

transcripts, $450 in "parking/gas/tolls," $150 for Westlaw, and $105.25 for various travel costs

for Cassell.  Fee Chart Exhibit at *6.  No evidence to support these costs was provided in the

Crowhurst's motion.  In response to Stein Trust's assertion that Crowhurst is not due costs

because her claim is unsubstantiated, Opp. Mem. at 12, Crowhurst provided only an invoice for

the deposition transcript of Howard Presant, the witness for the Stein Trust, in the amount of

$553.60, Reply Mem. at 8, Exhibit at *1. The Court takes judicial notice of the $400 filing fee as

reflected in the Docket.  See Canaveral, 2019 WL 4195194, at *10; see also Ortega v. JR Primos

2 Rest. Corp., 2017 WL 2634172, at *8 (S.D.N.Y. June 16, 2017).  While the Court could

potentially accept a sworn statement of costs, virtually no detail is given by Crowhurst as to

"parking/gas/tolls" or how she allocated $150.00 to "Westlaw."  Fee Chart Exhibit at *6.

Furthermore, the same doctrine that requires a reduction in fees due to the lack of

success, see Hensley, 461 U.S. at 435, applies equally to costs, Salustio v. 106 Columbia Deli

Corp., 2017 WL 5714089, at *3 (S.D.N.Y. Nov. 27, 2017) (citing Semi-Tech Litig., LLC v.

Bankers Tr. Co., 2006 WL 3690659, at *1 (S.D.N.Y. Dec. 14, 2006)).  For purposes of this

motion, Crowhurst succeeded only on her wage theft claim, which was one of four claims raised

in her complaint.  See 2d Amend. Complaint.  In light of this, we conclude that awarding the

$450.00 filing fee and $553.60 for the deposition, for a total of $1003.60, is as an appropriate

award for costs.

III.   CONCLUSION

For the foregoing reasons, the plaintiff's motion for attorney's fees and costs  (Docket

# 301) should be granted in the amount of $5403.60.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).

A party may respond to any objections within 14 days after being served.  Any objections and

responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Judge Koeltl at

500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file

objections or responses must be directed to Judge Koeltl.  If a party fails to file timely

objections, that party will not be permitted to raise any objections to this Report and

Recommendation on appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a),

(b), d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins,

Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 19, 2019
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

26